UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

SYNIDA LEANN LOPEZ DE PAZ,                    25-cv-2180 (JGK)

                              Plaintiff,      MEMORANDUM OPINION
                                              AND ORDER

        - against -

EXPERIAN INFORMATION SOLUTIONS, INC.
D/B/A/ EXPERIAN,

                              Defendant.
————————————————————————

JOHN G. KOELTL, District Judge:

       The plaintiff, Synida Leann Lopez de Paz, alleges that Experian Information Solutions, Inc. violated the Fair Credit Reporting Act, 15 U.S.C. § 1681i, by failing to conduct a reasonable reinvestigation after she disputed supposedly inaccurate information in her credit report. Lopez claims that she and Experian entered into a settlement agreement shortly after Experian removed the action to federal court and Lopez now moves to enforce that alleged agreement. Experian opposes that motion and separately moves to transfer this action to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

       For the reasons set forth below, Lopez's motion to enforce is **denied** and Experian's motion to transfer is **granted**.

## I. Background

Lopez alleges that in December 2024, she "sent a written dispute letter to Experian at its designated address, requesting a reinvestigation into the accuracy and completeness" of three accounts — what the parties call "tradelines" — appearing on her credit report. Compl. ¶ IV.A.9, ECF No. 1-1. According to Lopez, she specifically identified certain deficiencies in the letter, but "[r]ather than conducting a reasonable reinvestigation as required under Section 1681i of the FCRA, Experian responded with a form-letter ... that failed to address [her] specific concerns." Id. ¶ IV.B.12.

In February 2025, Lopez, who is a citizen of Florida,[1] sued Experian in New York state court, and Experian removed the action to this federal court. ECF No. 1. Shortly afterward, Experian informed the Court that it intended to move to transfer the action to the United States District Court for the Middle District of Florida and requested a premotion conference. ECF No. 13. During that conference, the Court set a briefing schedule on Experian's anticipated motion to transfer and referred the case to Magistrate Judge Barbara Moses to discuss the prospect of settlement in the meantime. ECF Nos. 18, 19. Magistrate Judge Moses then scheduled a conference for May and instructed

---

[1] See Decl. of Karl B. Colbary Supp. Mot. to Transfer Venue (Colbary Transfer Decl.) Exs. 1–4, ECF 31.

the parties to "conduct at least one good-faith settlement dis-
cussion" before then. ECF No. 22 at 2.

The parties' counsel complied and had a telephone call to
discuss settlement on April 30, 2025. Decl. of Karl B. Colbary
Opp. Pl.'s Mot. to Enforce Settlement Agreement (Colbary En-
forcement Decl.) ¶ 5, ECF No. 40. During that call, Lopez's
counsel noted that Lopez had concerns with other tradelines that
she had not addressed in her complaint and raised the possibil-
ity of a global settlement covering all her claims against Ex-
perian. Id. Later that same day, Lopez's counsel sent Experian a
letter indicating that Lopez was willing to "settle **all claims**
against Experian for a lump-sum payment of $12,500, inclusive of
all actual, statutory, and punitive damages, attorneys' fees,
and costs." Id. Ex. 1 at 3 (emphasis in original).

Experian responded by email on May 7 that it was able to
"offer $8,000 to settle this matter." Id. Ex. 2 at 5. Lopez re-
jected that offer because "it d[id] not include tradeline dele-
tion of the subject tradelines." Id. at 3. Experian sought clar-
ification about whether Lopez was "looking to delete the two
tradelines that remain at issue in this case," to which Lopez's
counsel responded "yes, just those 2 remaining subject trade-
lines." Id. at 2–3. Experian's counsel replied later that even-
ing that "Experian [wa]s willing to delete the two accounts at
issue if [they] c[ould] settle at $8k." Id. at 1.

The next day, May 8, Lopez's counsel responded that "[t]he offer as presented is accepted," but claimed that the offer "does not address or include other tradelines or the file as a whole" and that he expected that Experian would "attempt to shoehorn in tradelines that are not the subject of this litigation, which won't happen." Id. Ex. 3 at 6. Mutual recriminations followed.

On May 9, Experian pushed back against Lopez's characterization of the negotiations, insisting that it "was under the impression that [they] were discussing a settlement of all claims." Id. at 5. Lopez's counsel responded that "[t]he parties already came to [an] agreement, and it is for deletion of 'the two accounts at issue' and $8,000 payment." Id. at 4. He then "sen[t] a W-9 to facilitate" Experian's payment. Id. On May 11, Experian emailed Lopez's counsel and maintained that "[t]here is no agreement" and that it had been "operating under the assumption that" the parties "were discussing a 'global settlement' of 'all claims.'" Id. at 2. Experian maintained that it "remain[ed] willing to delete the two tradelines at issue in this case and pay $8,000 to settle **all** of [Lopez's] claims as they relate to **all** her tradelines." Id. (emphases in original). Lopez's counsel was not mollified and threatened to "ask the court ... to enforce the settlement agreement" unless Experian "reverse[d] the repudiation." Id. at 1.

On May 9, 2025, Experian moved to transfer this case to the United States District Court for the Middle District of Florida. ECF No. 29. Two days later, Lopez moved to enforce the alleged settlement agreement. ECF No. 32.

## II. Lopez's Motion to Enforce

Lopez claims that she and Experian entered into a binding settlement agreement and requests that the Court compel Experian to perform. In her view, Experian offered to pay her $8,000 and remove two credit tradelines from her credit report in exchange for releasing any claims she had against Experian arising from only those tradelines. Mot. to Enforce Br. 4, ECF No. 34. Lopez claims she "accepted the offer unequivocally in writing," and then partially performed by sending a W-9 form and requesting additional details. Id. Experian disagrees. It contends that the parties never agreed on a material issue — whether Experian's payment would buy it a general release. See Mot. to Enforce Opp. Br. 5, ECF No. 39. Without a meeting of the minds on this issue, Experian argues there can be no binding contract. Id.

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." Meetings & Expositions, Inc. v. Tandy Corp., 490

F.2d 714, 717 (2d Cir. 1974) (collecting cases).[2] Parties may enter into a settlement agreement without memorializing it in a fully executed written document, and that settlement agreement is as enforceable as any other oral contract. Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985). In determining whether an unsigned settlement agreement is binding, courts in the Second Circuit consider four factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id.[3] "No single factor is dispositive; rather, all four factors should be considered for their bearing on the parties' intent in

_____

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

[3] The Court of Appeals for the Second Circuit has not determined whether state or federal law controls the enforceability of unwritten settlement agreements when district courts are exercising federal-question jurisdiction. Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996) ("We assume, without deciding, that New York law provides the rule of decision for determining the validity of the oral settlement agreement."); see also Figueroa v. N.Y.C. Dep't of Sanitation, 475 F. App'x 365, 366 (2d Cir. 2012) ("[W]e note that the question of whether federal or state law controls the enforceability of a settlement agreement in this context is an open one."). The choice of law does not affect the analysis in this case, however, because "there is no material difference between the applicable state law or federal common law standard," at least on this issue.

the context of the entire case." <u>Langreich v. Gruenbaum</u>, 775 F. Supp. 2d 630, 636 (S.D.N.Y. 2011).

In this case, the balance tips decidedly against finding that the parties entered into a binding settlement agreement.

### A. Express Reservation

The first <u>Winston</u> factor "concerns whether the parties intended to consent to a binding agreement without a writing." <u>Id.</u> This factor focuses on express reservations, which weigh heavily in the analysis. But lesser "language in the correspondence [that] reveal[s]" an intent "not to be bound prior to the execution of a document" can also weigh against finding that the parties entered into a binding contract. <u>Winston</u>, 777 F.2d at 81.

In this case, there is no textual indication — express or otherwise — that the parties intended to be bound only by a formal written document. Indeed, Experian essentially recognizes as much by addressing only the last three <u>Winston</u> factors. <u>See</u> Mot. to Enforce Opp. Br. 8 ("Where the second, third, and fourth <u>Winston</u> factors weigh against enforcement ....""). The first <u>Winston</u> factor therefore weighs against Experian.

---

<u>Ciaramella v. Readers' Dig. Ass'n, Inc.</u>, 131 F.3d 320, 322 (2d Cir. 1997).

## B. Partial Performance

The second Winston factor concerns partial performance. "Partial performance tends to show that the parties saw themselves as obligated to perform." Hallett v. Stuart Dean Co., 481 F. Supp. 3d 294, 302 (S.D.N.Y. 2020).

Lopez claims that she "partially performed by relying on the agreement and refraining from further litigation efforts, such as pursuing discovery or filing motions." Mot. to Enforce Reply Br. 6, ECF No. 49. However, on May 9, Experian rejected Lopez's May 8 statement that Experian's settlement offer did not cover all disputed tradelines. Colbary Enforcement Decl. Ex. 3 at 5. At that point, it was clear the parties disagreed over a material term of the proposed settlement offer and indeed over whether they had reached a settlement agreement at all. And by then, there had been no partial performance of the purported settlement agreement. Lopez's transmission of the W-9 form did not reflect a good-faith partial performance of an agreement; rather, it was a transparent litigation tactic. Similarly, there is no evidence that discovery was paused over the single day that the parties disputed whether they had reached an agreement. Anything that Lopez claims to have done later is irrelevant because actions taken by the movant after it becomes clear that the parties disagree about the existence of a contract — particularly trivial actions like sending a W-9 form — are not

evidence that the parties ever reached an agreement. Cf. Gar-mashov v. U.S. Parachute Ass'n., Inc., No. 21-cv-4917, 2022 WL 17342390, at *4 (S.D.N.Y. Nov. 29, 2022) ("The second factor weighs against finding a binding agreement, because there was no substantial partial performance, other than the exchange of promises and the subsequent transmission of a W-9 form."). The second Winston factor therefore weighs against Lopez.

### C. Agreement on Material Terms

"The third Winston factor asks whether the parties have agreed upon material terms." Hallett, 481 F. Supp. 3d at 302–03. "[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002) All contracts require mutual assent, which in turn requires "a meeting of the minds of the parties." Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011). "[I]f there is no meeting of the minds on all essential terms, there is no contract." Id.

Despite Lopez's insistence to the contrary, the parties never agreed on one of the key issues — whether Lopez was releasing all her potential claims against Experian or only those involving two tradelines. Aside from Lopez's opening letter — which offered to "settle **all claims** against Experian for a lump-sum payment of $12,500," Colbary Enforcement Decl. Ex. 1

at 3 (emphasis in original) — the correspondence between the parties is silent on the scope of the release Experian would receive. In fact, when Lopez's counsel accepted the purported offer, he explicitly anticipated that Experian would take the position that Experian had agreed to settle all of Lopez's claims. Id. Ex. 3 at 6.

This disagreement over whether the parties had agreed on a general release counsels strongly against finding that the parties agreed on all the material terms. "[I]f the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms" — as in this case — "then the Court can neither find, nor enforce, a contract." Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc., No. 06-cv-2652, 2008 WL 5169495, at *3 (S.D.N.Y. Dec. 9, 2008); see also Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 715 N.E.2d 1050, 1053 (N.Y. 1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."). Because the language of the correspondence indicates that the parties never agreed on perhaps the most important settlement term, the third Winston factor weighs heavily against Lopez.

### D. Usually Committed to Writing

The fourth Winston factor asks whether the kind of agreement the movant seeks to enforce is ordinarily committed to writing.

Experian argues that this factor weighs against Lopez because "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Mot. to Enforce Opp. Br. 6 (alteration in original) (quoting Ciaramella, 131 F.3d at 326). But whether a settlement agreement is usually in writing depends on the complexity of the agreement. In re Est. of Brannon v. City of New York, No. 14-cv-2849, 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016) ("[T]his prong of the analysis focuses on whether the settlement terms are sufficiently complex or involve long time periods such that there should be a formal writing ...."); see also Cedric Kushner Promotions, Ltd. v. King, No. 98-cv-6859, 1999 WL 13732, at *2 (S.D.N.Y. Jan. 11, 1999) (noting that "courts have considered both the amount of money at stake as well as the magnitude and complexity of the deal"). The Winston Court itself assessed whether the purported settlement was "the type of agreement that generally requires a written contract ... by examining ... (1) the amount of money at issue, (2) whether the terms of agreement will carry into perpetuity, and (3) the length and complexity of the agreement itself." Conway v. Brooklyn Union

Gas Co., 236 F. Supp. 2d 241, 251 (E.D.N.Y. 2002) (citing Winston, 777 F.2d at 83).

The agreement here is not especially complex, and the method the parties used to memorialize it seems consistent with its simplicity. Experian offered a relatively small amount of cash to settle some relatively straightforward claims. See, e.g., Walker v. City of New York, No. 05-cv-0004, 2006 WL 1662702, at *9 (E.D.N.Y. June 15, 2006) ($7,500 lump-sum settlement was not the kind of agreement that was typically memorialized in writing).

On the other hand, Experian represents that its ordinary practice is to enter into formalized written agreements when settling Fair Credit Reporting Act claims. Colbary Enforcement Decl. ¶¶ 2–3. Lopez's counsel has previously settled similar cases with Experian, and therefore it would have known that. Id. ¶ 4. But the focus is on the nature of the settlement, "not on whether certain entities ... prefer to put their settlement agreements in writing." Est. of Brannon, 2016 WL 1047078, at *3.

Because the settlement terms are relatively straightforward, the fourth Winston factor weighs against Experian.

                    *     *     *

Two of the four Winston factors weigh against finding that the parties made an enforceable agreement, and two weigh in favor. The Court must consider the totality of the circumstances

12

with an eye toward "the parties' intent in the context of the entire case." Langreich, 775 F. Supp. 2d at 636. And viewed holistically, the parties' correspondence strongly suggests that their minds never met on what claims they thought they were settling. The parties never agreed on a material term of the supposed settlement and there is no way to construct a binding agreement without an agreement on whether the settlement included a general release. The Court therefore **denies** Lopez's enforcement motion.

### III. Experian's Motion to Transfer

Experian separately moves to transfer this action to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26–27 (1960)). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a

case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

The parties do not dispute that Lopez could have brought this action in the Middle District of Florida.[4] Instead, they focus on whether transferring this action would promote the interests of justice and convenience of the parties and witnesses. In determining whether transfer to another district would promote convenience and fairness, courts in this circuit consider several private and public interests. These interests include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances.

Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998).

Factors three, six, and seven are neutral and have no bearing on Experian's motion. Lopez represents that she would not be

---

[4] Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Lopez lives in that district and the undisputed record indicates that many of the events giving rise to her claim occurred there.

inconvenienced by having to litigate in this district. Decl. of Brian Ponder Opp. Mot. to Transfer (Ponder Decl.) ¶ 3, ECF No. 42. And there is no reason to think Experian, which has its principal place of business in California, Compl. ¶ II.9, would find it any more convenient to litigate in Florida than in New York. As for the relative means of the parties, Experian has superior resources to Lopez, but Lopez makes no argument that litigating in Florida would be costlier than litigating in New York. Finally, federal courts in Florida are as familiar with the Fair Credit Reporting Act as courts in this district.

The remaining factors, however, almost uniformly favor transfer. In fact, Magistrate Judge Sarah Cave recently granted a motion to transfer a virtually identical case brought by Lopez's counsel to the Northern District of Georgia for the same reasons pressed by Experian in this case. See generally Jones v. Equifax Info. Servs., LLC, No. 25-cv-1535, 2025 WL 1466898 (S.D.N.Y. May 22, 2025). Judge Woods agreed and overruled objections to the Magistrate Judge's opinion and order. Id. ECF No. 41 (May 28, 2025). Lopez claims that Jones is "irrelevant, erroneous, and unpersuasive." Mot. to Transfer Opp. Br. 6. To the contrary, as explained below, the Court finds the reasoning in Jones persuasive.

## A. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." Guardian Life Ins. Co. of Am. v. Coe, 724 F. Supp. 3d 206, 214 (S.D.N.Y. 2024) (quoting Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). However, a plaintiff's choice of forum "is given less weight" when the plaintiff "is not a resident of the forum and the cause of action is minimally connected with the forum." Eichenholtz v. Brennan, 677 F. Supp. 198, 201 (S.D.N.Y. 1988). And when "'it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter,' [the] plaintiff's choice of forum is 'entitled to no weight whatever' and transfer of venue is appropriate." Pierce v. Coughlin, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) (quoting Polaroid Corp. v. Casselman, 213 F. Supp. 379, 383 (S.D.N.Y. 1962)).

Experian argues that Lopez's claim has no connection to the forum, and thus her choice of forum should receive little deference. It notes, for example, that none of the parties or potential witnesses identified in the parties' initial disclosures reside in the Southern District of New York. See Colbary Transfer Decl. Exs.5–6.

Lopez does not dispute that none of the witnesses are in this forum, that she resides in Florida, or that none of the Experian representatives who dealt with her reside in this District. She responds instead with two arguments. First, she notes that her "New York-based counsel and lack of Florida counsel make SDNY strategic." Mot. to Transfer Opp. Br. 7. But that cuts the other way: that she chose this forum for reasons of strategy, rather than convenience or fairness, weighs against affording much deference to her choice of forum. And in any event, that Lopez's counsel is based in New York is irrelevant to the transfer analysis because § 1404 focuses on the convenience of parties and witnesses, not their lawyers. See Dickerson v. Novartis Corp., 315 F.R.D. 18, 29 (S.D.N.Y. 2016) ("Despite Plaintiff's contention to the contrary, 'the convenience of counsel is not of particular importance.'" (quoting GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc., No. 13-cv-1395, 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013))); see also Olympia Grp., Inc. v. Cooper Indus., Inc., No. 00-cv-7367, 2001 WL 506219, at *2 (S.D.N.Y. May 14, 2001) ("[T]he convenience of the parties' lawyers is not relevant to the decision whether to transfer.").

Lopez also claims that this litigation has some connection to the forum because "Experian's inaccurate reporting impacts New York's financial markets, where [her] injuries are felt."

Mot. to Transfer Opp. Br. 7. But this litigation will not affect New York markets and none of the transactions at issue have any meaningful connection to New York. Therefore, this factor does not support maintaining this case in New York.

### B. The Convenience of Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." Guardian Life Ins., 724 F. Supp. 3d at 214 (alteration in original). And "[t]he convenience of witnesses, in particular, is often cited as the most important factor." Id. The party seeking transfer bears the burden of "clearly specify[ing] the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), overruled on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579, 585 (2d Cir. 1990).

Experian contends that this factor favors transfer because two potential witnesses — Lopez herself and Cordova Financial, a financial repair clinic that Lopez has appointed as her agent in "credit and debt matters," Colbary Transfer Decl. ¶ 5 & Ex. 4 — are based in the Middle District of Florida. Experian also notes that Lopez seeks to recover damages for "emotional distress," Compl. ¶ I.4, and claims it may seek testimony from individuals who can speak to Lopez's emotional state, such as "treating doctors, therapists, co-workers, family members, or

friends" — all "likely to reside in or near Lake Wales, Flor-
ida." Mot. to Transfer Br. 7. Lopez responds that this is "spec-
ulation" that "lacks evidence." Mot. to Transfer Opp. Br. 8. But
even putting aside witnesses that might testify to her mental
state, the plaintiff has no response to Experian's observations
that Cordova Financial is based in Florida and that no witnesses
are based in New York. This factor thus weighs strongly in favor
of transfer.

### C. The Location of Relevant Documents

"In an era of electronic documents, easy copying and over-
night shipping, this factor assumes much less importance than it
did formerly." ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d
542, 548 (S.D.N.Y. 2008); see also Tlapanco v. Elges, 207 F.
Supp. 3d 324, 330-31 (S.D.N.Y. 2016) ("The location of relevant
documents and the ease of access to sources of proof is mostly a
neutral factor, in light of the technological age in which we
live, where there is widespread use of, among other things,
electronic document production.").

Experian claims that "documentation regarding the accounts
at issue, medical records, or credit denials ... will also be
located in the Middle District of Florida." Mot. to Transfer
Br. 7-8. It is unclear, however, why these documents could not
easily be transferred electronically. This factor is therefore
neutral.

### D. The Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." Tlapanco, 207 F. Supp. 3d at 331. The "locus of operative facts" is where the "acts or omissions for which [the] Defendants could be held liable occurred." Solar v. Annetts, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010). Transfer ordinarily is appropriate when "a cause of action arises from claims of alleged wrongdoing in the proposed transferee district." Sheet Metal Workers' Nat'l Pension Fund v. Gallagher, 669 F. Supp. 88, 92-93 (S.D.N.Y. 1987).

The facts giving rise to Lopez's claim occurred in Florida. Lopez sent her letter requesting a reinvestigation to Experian from her address in Florida to Experian's PO box in Allen, Texas, see Colbary Transfer Decl. Exs. 1-2, and she would have experienced any damages, such as emotional distress or reputational harm, in Florida as well. Lopez points to nothing suggesting that her claim has any connection to New York. This factor therefore supports transfer.

### E. The Availability of Process to Compel Unwilling Witnesses

Under Federal Rule of Civil Procedure 45, a district court generally cannot issue a subpoena compelling a nonparty to travel more than 100 miles from where the nonparty resides. See Guardian Life Ins., 724 F. Supp. 3d at 215. As discussed above, virtually every witness resides outside New York and more than

20

100 miles from this district. For example, Cordova Financial is
in Florida. Colbary Transfer Decl. Ex. 4. Portfolio Recovery As-
sociates, LLC — one of the entities Lopez identified in her ini-
tial disclosures — is in Norfolk Virginia. Id. Ex. 5 at 2. The
only nonparty witness identified in the parties' initial disclo-
sures that appears to be located within 100 miles of this dis-
trict is Eastern Account System of Connecticut, which is based
in Brookfield, Connecticut. Id. Lopez fails to address this fac-
tor. This factor therefore weighs in favor of transfer.

### F. Trial Efficiency and the Interests of Justice

"The Court's consideration of whether transfer is in the
interest of justice is based on the totality of the circum-
stances and relates primarily to issues of judicial economy."
Indian Harbor Ins. Co. v. Factory Mut. Ins., 419 F. Supp. 2d
395, 407 (S.D.N.Y. 2005). One of those considerations is the
stage of the litigation. "When a case is in its earliest stages,
it is generally not inefficient to transfer the case." Dynamic
Data Techs., LLC v. HTC Corp., No. 18-cv-10180, 2019 WL 2433549,
at *8 (S.D.N.Y. June 11, 2019).

According to Experian, this litigation is in its earliest
stages. It notes, for example, that neither party has taken sig-
nificant discovery. Nor has the Court had to "intervene in the
case in a manner that would speed the resolution of future is-
sues." Tlapanco, 207 F. Supp. 3d at 333. Lopez generically

insists that "[d]iscovery has progressed" and that "[t]ransfer risks delay." Mot. to Transfer Opp. Br. 9. But Lopez does not explain what discovery she means. To the contrary, it appears that the parties have merely exchanged initial disclosures and preliminary discovery requests. See Colbary Transfer Decl. Exs. 5–6; Colbary Enforcement Decl. Ex. 3 at 7 (Lopez sending first set of discovery requests on April 8, 2025). Lopez also fails to explain why transfer risks delay here. This is not a case in which "the parties have already expended considerable time and expense conducting discovery," "requir[ing] another court to become familiar with this action." Mattel, Inc. v. Robarb's, Inc., 139 F. Supp. 2d 487, 491 (S.D.N.Y. 2001).

"The public interest in local adjudication of local contro-versies" also "favors transfer ... to the states where the" events underlying the litigation occurred. Hamilton v. Accu-Tek, 47 F. Supp. 2d 330, 347 (E.D.N.Y. 1999) (Weinstein, J.). That is in large part because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." Am. Dredging Co. v. Miller, 510 U.S. 443, 448 (1994). A Florida jury has a far greater interest in hearing a dispute by a Florida plaintiff regarding claims arising in Florida than a New York jury would. This factor therefore weighs in favor of transfer.

### G. The Effect of Removal

Finally, in addition to the ordinary transfer factors, Lopez argues, citing Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996), that "Experian's removal concedes SDNY's suitability." Mot. to Transfer Opp. Br. 9. But Caterpillar says nothing about the effect of removal on venue. See Jones, 2025 WL 1466898, at *3. Instead, that case addressed "whether the absence of complete diversity at the time of removal is fatal to federal-court adjudication." Caterpillar, 519 U.S. at 64. A defendant's decision to remove a case to federal court does not, as Lopez claims, preclude the defendant from later seeking to transfer the case to a more convenient forum. See, e.g., Castro v. Colgate-Palmolive Co., No. 19-cv-279W, 2019 WL 13128373, at *1 (W.D.N.Y. Mar. 21, 2019) ("Section 1404(a) applies to cases removed from state court."); Guccione v. Harrah's Markets Servs. Corp., No. 06-cv-4361, 2009 WL 2337995, at *1 n.5 (S.D.N.Y. July 29, 2009) ("[A] district court may consider a post-removal request to transfer venue under § 1404(a).").

\*   \*   \*

Nearly every public and private interest points to the Middle District of Florida; none points to the Southern District of New York. Because the convenience of the litigants and the interest of justice would be better served if the parties

23

litigated this case in Florida, Experian's motion to transfer is **granted.**

### IV. Conclusion

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, Lopez's motion to enforce an alleged settlement agreement is **denied** and Experian's motion to transfer venue is **granted.**[5]

The clerk is directed to close ECF Nos. 29 and 32. The Clerk is also respectfully requested to transfer this case to the Middle District of Florida. However, the transfer should be stayed for fourteen days so that the parties may determine whether the case can be resolved prior to transfer.

**SO ORDERED.**

Dated:      New York, New York
            September 22, 2025

                                            John G. Koeltl
                                     **United States District Judge**

---

[5] There is an outstanding motion by the plaintiff to strike the affirmative defenses raised by Experian. ECF No. 20. That motion should be decided by the court to which this case is assigned in the Middle District of Florida because it relates to the merits of the case.